TRADERS AND GENERAL INSURANCE COMPANY, Appellant,

v.

Edward Glenn LANGE, Appellee.

No. 7351.

Court of Civil Appeals of Texas.

Texarkana.

Jan. 30, 1962.

Rehearing Denied Jan. 30, 1962.

Kenley, Sharp, Ritter & Boyland, Longview, for appellant.

Rex Houston, Law Offices of Gordon R. Wellborn, Henderson, for appellee.

FANNING, Justice.

The opinion rendered in this cause on January 16, 1962 is withdrawn and the following opinion is substituted in lieu thereof.

Appellant insurance company has appealed from a total permanent disability judgment rendered against it in a work-

men's compensation insurance case tried before a jury upon special issues.

Appellant by its first point contends that there was no competent evidence establishing a workmen's compensation policy, or workmen's compensation coverage inuring to the benefit of plaintiff-appellee by way of contract, estoppel or waiver. By its fourth point appellant contends to the effect that there was no evidence that Neil Cooper (the local recording agent of appellant) had apparent authority to advise Paul Lange that the policy would remain in force and effect.

■ E. H. Lange, prior to World War II, commenced doing business in Gladewater, Texas, under the trade name of E. H. Lange & Sons, which was a partnership, consisting of E. H. Lange and his sons, Paul, Dale and Edward Glenn Lange. The father died in 1955—after that time (and until a later time in 1959 hereinafter explained) the business was operated by Paul Lange, Dale Lange and Edward Glenn Lange for themselves, their mother and their sister. During the major portion of this time the insurance business of the concern had been handled by Neil Cooper, a local recording agent of appellant insurance company in Gladewater.

Appellant insurance company issued a workmen's compensation insurance policy (on a standard form as prescribed by the State and approved by the State Board of Insurance) to E. H. Lange & Sons, a partnership, on July 13, 1959, effective as of August 8, 1959, and covering a period of one year therefrom. This policy was delivered by Neil Cooper to the partnership. The policy contained the following provisions:

"12. Changes Notice to any agent or knowledge possessed by an agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy, nor, shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the company.

"13. Assignment Assignment of interest under this policy shall not bind the company until its consent is endorsed thereon. If, however, during the policy period the insured shall die, and written notice is given to the company within thirty days after the date of such death, this policy shall cover the insured's legal representative as insured.

"17. Declarations By acceptance of this policy the insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

D. E. (Dale) Lange had been a partner until his death in March, 1959. On August 5, 1959, appellant insurance company issued a written endorsement deleting the name of D. E. Lange as a partner in the firm of E. H. Lange & Sons.

At the time of the issuance of the above referred to policy, appellee Edward Glenn Lange, among other persons, was a partner in the business concern of E. H. Lange & Sons, and was one of the employers, and a written endorsement excluded him from coverage in Louisiana because he was a partner, which written endorsement was signed by him as of the effective date of August 25, 1959, and said endorsement was signed and countersigned by authorized representatives of appellant company.

Plaintiff's Exhibit No. 23 is a written bill of sale from Sarah Lange, E. Glenn Lange, and Doris Lange Smith joined by her husband, Marvin Smith, Jr., which conveys their interest in the business and assets of the firm of E. H. Lange & Sons to

H. Paul Lange. The instrument (which is an unrecorded instrument) bears date of November 9, 1959, and states that the assignment is effective as of October 1st, 1959. Paul Lange testified to the effect that he acquired the interests of the other partners by "swapping" to them his interest in the other property of the E. H. Lange Estate, and that effective as of October 1st, 1959, he became the sole owner of the business of E. H. Lange & Sons.

There is considerable conflict in the main in the testimony of Paul Lange and Neil Cooper as to their respective versions of what happened after October 1st, 1959, with reference to the conversations between them with respect to insurance coverage on the policy in question. Mr. Paul Lange testified to the effect that after October 1st, 1959, he immediately notified Mr. Cooper of his purchase of the interests from the other partners and of his sole ownership of the business, and that Neil Cooper at that time advised him that the workmen's compensation insurance policy would remain in full force and effect, that he believed and relied on such advice from Cooper, that after giving Cooper such notice in October, 1959 that Cooper continued to regularly service the policy and that thereafter Cooper and his agency continued to receive the monthly premiums on the policy in question.

Mr. Cooper testified to the effect that he had a conversation with Paul Lange regarding a proposed transfer (but not an actual transfer) of the interests in question to Paul Lange and was requested by Paul Lange to check and see if the previous experience credit on the policy would follow him if he acquired the other interests of the company. Mr. Cooper further testified to the effect that he reported to Paul Lange that he would not be able to keep the discount unless he owned 33⅓% of the company prior to the transfer, and that Mr. Paul Lange did not tell him anything more about the matter then and did not tell him anything about it until after appellee was injured on March 14, 1960, which was the first time that Mr. Paul Lange told him that he had acquired the interests of the other partners.

The jury apparently believed Paul Lange's version of his conversation with Neil Cooper rather than Mr. Cooper's version. The jury answered all issues favorably to appellee and among other answers, found to the following effect. That Paul Lange notified Neil Cooper that he had acquired the interests of the other partners of the business; that Neil Cooper at that time advised Paul Lange that the workmen's compensation insurance policy would remain in force and effect; that at the time of giving such advice, Neil Cooper was acting within the apparent scope of his authority for the insurance company; that Paul Lange believed such advice; that Paul Lange relied upon such advice; that after Paul Lange notified Neil Cooper that he had acquired the interests of the other partners, Cooper continued to regularly service the workmen's compensation insurance policy; and that after such time Cooper and his agency continued to receive the monthly premiums on the workmen's compensation insurance policy.

Mr. Paul Lange however did testify that he learned that the premium rates would go up if the policy was changed to show him as sole owner, which conversation with Mr. Cooper he said took place about three months prior to appellee's injury.

Mr. Paul Lange testified to the effect that on March 14, 1960, when his brother, Edward Glenn Lange, got hurt, that appellee was an employee of the business owned solely by Paul Lange.

Paul Lange did not change the bank account from E. H. Lange & Sons until after his brother, appellee herein, got hurt.

Premiums on the policy in question were paid monthly and calculated on forms furnished by appellant. The reports would be forwarded to the insured, filled out, and returned to Mr. Cooper for transmittal to appellant. There was undisputed evi-

dence that the premiums after October 1st, 1959, were paid in the same manner, by company check of E. H. Lange & Sons and the monthly payroll reports, originating in the home office of defendant and containing information that the partnership still existed were returned unchanged and signed by an employee of E. H. Lange & Sons.

No endorsement or other change was made on the policy after October 1, 1959.

No notice of the termination of the partnership had been filed with the Industrial Accident Board prior to May 5, 1960.

On May 18, 1960, an assumed name certificate was filed with the County Clerk of Gregg County, Texas, for Paul Lange, d/b/a Lange Casing Pulling.

There is no evidence in the record that Neil Cooper had actual authority from appellant insurance company to make the representations that the jury found that he made.

There is no evidence in the record that Neil Cooper had actual authority from appellant insurance company to orally contract with Paul Lange to extend to him workmen's compensation coverage under the old policy at the same rates as the old policy and to remove the exclusion of appellee Edward Glenn Lange from the policy as a partner and place him as a covered employee of Paul Lange, sole owner, d/b/a Lange Casing Pulling, without making a written endorsement thereon to be approved by appellant or without writing a new and proper written policy approved by appellant.

Insurance policies, the forms, coverages and rates are controlled by law. It is stated by the Supreme Court of Texas in United States Insurance Co. of Waco v. Boyer, 153 Tex. 415, 269 S.W.2d 340, 341, in part as follows: "It is unlawful to issue a policy in words other than those expressly approved by the Insurance Commission, and every insurance company selling [its policies] is required to word its

policies precisely alike. Art. 5.06 Insurance Code, V.A.C.S. Uniform policies are necessary to a uniform rate structure, which in turn resulted from the public injury caused by highly competitive wildcat insurance schemes. * * *".

Art. 8308, Sec. 18a, Vernon's Ann.Civ. St., provides:

"Whenever any employer of labor in this State becomes a subscriber to this law, he shall immediately notify the board of such fact, stating in such notice his name, place of business, character of the business, approximate number of employés, estimated amount of his payroll and the name of the insurance company carrying his insurance, the date of issuing the policy and the date when the same will expire, and whenever any policy is renewed that fact shall contain the above facts. The association shall also report the same to the board, giving the name of the employer, place of business, character of the business, approximate number of employés, estimated amount of payroll, date of issuance and the date of expiration of said policy. Any employer or association willfully failing or refusing to make any such report shall be liable for and shall pay to the State of Texas a penalty of not more than one thousand dollars for each offense, and the same to be recovered by suit in Travis County by the Attorney General or by the district or county attorney under his direction in the district court thereof".

Paul Lange, after acquiring sole ownership of E. H. Lange & Sons, on October 1, 1959, did not thereafter comply with Art. 8308, Sec. 18a, until after his brother Edward Glenn Lange got hurt, as it was not until May 5, 1960, that notice of termination of the partnership was given to the Industrial Accident Board.

Art. 8309, Sec. 1, V.A.C.S., provides in part: "* * * 'Employer' shall mean

any * * * partnership * * * 'Subscriber' shall mean any employer who has become a member of the association by paying the required premium."

Art. 21.14, Sec. 22, Insurance Code, V.A.C.S., provides in part as follows:

"It shall be unlawful for any local recording agent to pay, allow, give or offer to pay, allow or give, directly, or indirectly, any rebate of premium payable * * * or any valuable consideration or inducement whatever, not specified in the policy or contract of insurance * * *."

Art. 5.56, Insurance Code, V.A.C.S., provides:

"The Board shall prescribe standard policy forms to be used by all companies or associations writing workmen's compensation insurance in this State. No company or association authorized to write workmen's compensation insurance in this State shall, except as hereinafter provided for, use any classifications of hazards, rates of premium, or policy forms other than those made, established and promulgated and prescribed by the Board."

Art. 5.57, Insurance Code, V.A.C.S., provides:

"The Board shall prescribe a uniform policy for workmen's compensation insurance and no company or association shall thereafter use any other form in writing workmen's compensation insurance in this State, provided that any company or association may use any form of endorsement appropriate to its plan of operation, if such endorsement shall be first submitted to and approved by the Board, and any contract or agreement not written into the application and policy shall be void and of no effect and in violation of the provisions of this subchapter, and shall be sufficient cause for revocation of license to write workmen's compensation insurance within this State."

It is our view that an examination of the above referred to statutes will reveal that the conduct of Paul Lange in keeping his new operation secret from the Industrial Accident Board in not complying with Art. 8308, Sec. 18a, V.A.C.S., was not in accordance with law. Likewise if Neil Cooper made the representations that Paul Lange said that he made to him, and which the jury found that Cooper made to him, then it is our view that Neil Cooper's actions in such respects were not in accordance with law as well as being unauthorized by his principal, the appellant insurance company.

It is clear that appellee Edward Glenn Lange who had been a partner and was still listed as a partner on the written policy in question could not collect on said written policy as an employee.

There is no evidence of probative force in the record that appellant insurance company ever ratified or attempted to ratify the alleged conduct of Neil Cooper in question, which conduct if true as found by the jury, was illegal, improper, and unauthorized conduct on his part.

We hold that under the rather unusual and peculiar facts of this case that there was no competent evidence establishing a workmen's compensation policy or workmen's compensation coverage inuring to the benefit of plaintiff-appellee by way of contract, estoppel or waiver. Appellant's first point is sustained. While we have not found any case directly in point with the unusual and peculiar fact situation we have here, we do think that the rationale of our decision here is supported in various respects by the insurance statutes above referred to and by the following cases: Traders' & General Insurance Company v. Emmert, Tex.Civ.App., 76 S.W.2d 208, 209, wr. refused; Wade v. Superior Insurance Company, Tex.Civ.App., 244 S.W.

2d 893, writ refused; Southern Surety Company v. Inabnit, et al., 119 Tex. 67, 24 S.W.2d 375; Service Mutual Insurance Company of Texas v. Blain et al., 140 Tex. 541, 168 S.W.2d 854; Mulkey v. Traders & General Ins. Co., Tex.Civ.App., 93 S.W.2d 582, writ refused.

Appellee, among other cases cited in his brief, heavily relies upon the case of Southern Underwriters v. Mahan, et al., Tex.Civ. App., 126 S.W.2d 802, err. dism., judg. corr. This case holds that the mere withdrawal of one partner from a business, without the introduction of a third party into the business, did not avoid the policy as to the employees of the remaining partner who continued to operate the business in the absence of increase of risk. In said case it was stated in part as follows:

"The reasoning above quoted is equally, if not more applicable, to the circumstances here presented; for the mere withdrawal of Murphy violated no letter of the provision, and no reason has been advanced, and we see none, for holding that it violated the purpose of the provision. *There was no addition made to the personnel of the subscriber. The risk based upon the nature of the business being operated is not claimed to have been changed or increased. The subject matter of the policy, the employees doing the work of the business, remained the same.* We see no reason why a provision against assignment of interest when contained in a policy of workmen's compensation insurance should be given a different meaning than when contained in a fire insurance policy." (Emphasis added).

The distinguishing features between the Southern Underwriters v. Mahan case and the case at bar are clearly apparent. In the Southern Underwriters case the person injured had been an employee of the partnership, and when one partner withdrew from the firm, the other partner continued to operate the business with said employee still working for him, and the withdrawal of the partner did not increase the risk. However, in the case at bar in the written policy Edward Glenn Lange was a partner and one of the employers in the business, no premiums of course were paid on him as an employee, and he was also specifically deleted from coverage by a written endorsement to the policy; when his brother Paul Lange and Neil Cooper had their conversations about insurance coverage after October 1st, 1959, no written policy of insurance was ever thereafter written between Paul Lange and appellant insurance company which would cover Edward Glenn Lange (a former partner) as an employee of Paul Lange, d/b/a Lange Casing Pulling. When the partner and employer, Edward Glenn Lange, became an employee he became an addition to the personnel of the employer Paul Lange, d/b/a Lange Casing Pulling, and any purported oral insurance contract between Paul Lange and Neil Cooper which attempted to cover the former partner Edward Glenn Lange as an employee without paying any additional premium therefor would constitute an increased risk and as hereinbefore held such character or oral contract would also be unauthorized, and one which there is no evidence to show that appellant insurance company ever authorized or ratified in any manner.

We also hold that there was no evidence of probative force in the record to show that Neil Cooper had apparent authority to advise Paul Lange that the policy would remain in force and effect. Appellant's fourth point is sustained.

Regardless of what Neil Cooper said, or did, there is no evidence in the record to show that his principal, the appellant insurance company, did any act or made any omission which would indicate that the principal knew about Cooper's representations or acts, or ever ratified such acts, and under this record there is no pertinent act or omission traceable directly to the principal. In Great American Casualty Co. v. Eichelberger, Tex.Civ.App., 37 S.W.2d

**184**

1050, writ refused, it was stated in part as follows:

> "Apparent authority is based on estoppel, and can rise from but two sources: First, the principal may knowingly permit the agent to so hold himself out as having such authority, and in this way the principal becomes estopped to claim that the agent does not have such authority. * * * Second, the principal may so clothe the agent with the indicia of authority as to lead a reasonably prudent person to believe that he actually has that authority.

> \* \* \* \* \* \*

> "The mere fact that the company had conferred on the agent the actual authority to execute and deliver the written policy referred to would not create the apparent authority to make an entirely different oral contract."

Also see the following authorities dealing with the question of "apparent authority" of an agent: General & Excess Underwriters v. Harrelson, Tex.Civ.App., 327 S.W.2d 78, err. ref., n. r. e.; Banker's Protective Life Ins. Co. v. Addison, Tex.Civ.App., 237 S.W.2d 694; Glens Falls Indemnity Company v. Roberson, Tex.Civ.App., 282 S.W.2d 438.

 Furthermore Neil Cooper's authority to make the type of oral contract of insurance contended for by appellee was prohibited by the policy. Both Paul Lange and Edward Glenn Lange who were partners at the time the written policy was taken out are properly chargeable with notice of the provisions of such written policy. In Home Ins. Co. of New York v. Lake Dallas Gin Co., Tex.Com.App., 93 S.W.2d 388, 391, it was held that one could not bind the principal when dealing with an agent whom he knows had limited authority and was acting beyond the scope of his authority. To the same effect is the case of Texas State Mutual Fire Ins. Co. v. Richbourg, Tex.Com.App., 257 S.W. 1089.

Finding from the record in this case that plaintiff-appellee Edward Glenn Lange was not covered by any binding insurance coverage of appellant insurance company at the time of his injury of March 14, 1960, the judgment of the trial court is reversed and judgment is here rendered in favor of appellant insurance company that appellee take nothing from appellant.

Reversed and rendered.